1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Samuel Willard, )<br>      Plaintiff, )<br>vs. )<br>Michael J. Astrue, Commissioner of )<br>the Social Security Administration, )<br>      Defendant. ) | No. CV-10-0438-TUC-DTF<br><br>**ORDER** |

Plaintiff Samuel Willard brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). The parties consented to exercise of jurisdiction by a Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1). (Docs. 4, 13.) This case presents two issues on appeal: whether the Administrative Law Judge (ALJ) erred in his determination of Willard's disability onset date; and whether the Appeals Council erred in its treatment of newly submitted evidence. Based on the pleadings and the record, the Court finds Plaintiff is entitled to relief in the form of a remand.

## **PROCEDURAL HISTORY**

Willard filed an application for Social Security disability insurance benefits (DIB) on April 12, 2006. (Administrative Record (AR) 92.) Willard alleged disability from November 1, 2005.[1] (*Id.*) Willard's application was denied (AR 51-53); however, upon reconsideration

---

[1] In a February 20, 2009 letter, Willard's counsel indicated the onset date to be January 2005. (AR 87.) This appears to have been an error because in the documents filed before this Court, Plaintiff continues to seek benefits from November 2005. (Doc. 19 at 2.)

1 | it was determined that he became disabled as of November 20, 2007 (AR 57-58.) A hearing was held on February 26, 2009 (AR 36-47), after which ALJ Norman R. Buls found, at Step Five, that prior to November 20, 2007, Willard was not disabled (AR 19-27). The Appeals Council denied Willard's request to review the ALJ's decision. (AR 1.)

**FACTUAL HISTORY**

Willard was born on May 3, 1958, making him 47 at the alleged onset date of his disability. (AR 92.) He worked steadily as a maintenance coordinator for a mine from 1976 until August 2004, when the mine closed. (AR 101-02, 112.) He worked for approximately one month in early 2006, but he stopped due to back and vision problems. (AR 40-41.)

The ALJ found that Willard had four severe impairments: degenerative disc disease of the lumbar spine, detached left retina (20/200 vision in his left eye and 20/25 vision in his right eye), paralyzed diaphragm on the right side, and some obesity. (AR 21-22.)

In concluding that Willard could work prior to November 2007, the ALJ adopted examining physician Dr. Suarez's August 9, 2006 functional findings as Willard's Residual Functional Capacity: lift 30 pounds occasionally and 25 pounds frequently; sit an unlimited amount of time; walk/stand two to four continuous hours a day; and occasionally climb, stoop, kneel and crouch. (AR 22.) The ALJ found that Willard's primary restriction was visual but that he could perceive small objects and hazards, thus, he could perform sedentary work. (AR 23-24.) The ALJ relied upon Dr. Soo Hoo's November 20, 2007 examination, in finding that Willard's RFC prevented him from working as of that date: lift/carry less than 10 pounds occasionally, much less than 10 pounds frequently; stand/walk less than 2 hours in a work day; sit at least 6 hours; occasionally climb ramps, balance and stoop; never climb stairs, ladders, ropes or scaffolding, crouch, kneel or crawl; could have difficulty with right-sided foot control; and required used of a hand-held device for weight bearing activity. (AR 24-25.) The ALJ concluded the sedentary occupational base was significantly eroded due to Willard's radicular hip pain, range of motion and use of a hand held assistive device for ambulation. (AR 25, 26.)

# **STANDARD OF REVIEW**

The Commissioner employs a five-step sequential process to evaluate DIB claims. 20 C.F.R. § 404.1520; *see also Heckler v. Campbell,* 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes him from performing his past work. 20 C.F.R. § 404.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

In this case, Willard was denied at Step Five of the evaluation process, for the time prior to November 2007. The Step Five determination is made on the basis of four factors: the claimant's RFC, age, education and work experience. *Hoopai*, 499 F.3d at 1074. "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir.2002).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the

evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney,* 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## **DISCUSSION**

Willard raises four arguments all related to the ALJ's finding that he was not disabled prior to November 2007.

### **Newly Submitted Evidence**

In a September 1, 2009 letter, submitted for the first time to the Appeals Council, Dr. William Ludt noted that he had been Willard's primary care doctor since 2001. (AR 293.) He reported that Willard had been suffering from intense low back pain since 2002, worsening over time, due to severe lumbar stenosis radiculopathy and severe narrowing of the foramina at L4-L5. (*Id.*) Willard consulted with him after his 2005 eye surgery because he was unable to work due to his inability to see details; Dr. Ludt stated that Willard suffers from severe vision derangement and is prone to stumbling into objects at the periphery of his vision. (*Id.*) Dr. Ludt opined that Willard could not stand for more than two hours of a work day, needed to alternate sitting and standing every 30 minutes, and could not sit for an entire workday but would need to lie down. (*Id.*) He stated these limitations existed in January 2006, November 2007, and as of the time of the letter. (*Id.*)

Willard argues that this newly submitted evidence requires a remand to the ALJ. The governing statute provides that a district court may order the Commissioner to take new evidence if it is material and there is good cause for failing to incorporate the evidence earlier. 42 U.S.C. § 405(g). Willard has made no effort to demonstrate good cause for not submitting the evidence sooner, despite Defendant arguing a lack of good cause in his

response. There is no apparent reason this evidence could not have been provided to the ALJ. Dr. Ludt has been Willard's primary care physician since 2001, and he knew prior to the hearing that his onset date of disability was a critical issue. Thus, the mere existence of this evidence does not require an automatic remand. However, contrary to Defendant's argument, this Court considers the evidence submitted to the Appeals Council in determining whether the ALJ's denial of benefits, prior to November 2007, is supported by substantial evidence. *See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).

In a related argument, Willard argues the Appeals Council erred in failing to review Dr. Ludt's letter. First, if there was error committed by the Appeals Council, it is not before this Court. Because the Appeals Council denied review, the final decision under review by this Court is that of the ALJ. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Second, Willard's argument is factually erroneous. The Appeals Council stated that it had reviewed Dr. Ludt's letter (AR 2, 4), and it did not provide a basis for changing the ALJ's decision (AR 2).

### **Onset Date**

Willard argues that his onset date of disability was in 2005, not November 2007. The parties are in agreement that the sedentary occupational base is significantly eroded if a person's visual limitation prevents him from seeing small objects. SSR 96-9p. The Court, therefore, assesses whether there was substantial evidence to support the ALJ's finding that Willard's vision allowed him to perceive small objects prior to November 2007.

In assessing Willard's RFC prior to November 2007, the ALJ gave controlling weight to Dr. Suarez's opinion. (AR 23.) Regarding vision, the ALJ found:

> Mr. Willard's primary restriction was visual. Most sedentary occupations require working with small objects. If a visual limitation prevents an individual from seeing the small objects involved in most sedentary unskilled work, or if an individual is not able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles, there will be a significant erosion of the sedentary occupational base. In Mr. Willard's case, his combined vision was 20/50 in spite of his impaired vision in his left eye. There was no evidence that he was unable to perceive small objects or hazards. His visual limitations did not preclude the performance of sedentary work.

(AR 23-24.)

The documentation of Willard's vision problems began around December 15, 2005, when he was seen for a retinal detachment in his left eye. (AR 205.) After the surgery his vision in his left eye was 20/200 and his right eye was 20/25. (AR 204.) In September 2006, Willard had retinal surgery on his right eye, in which he had experienced a floater for the previous eight months. (AR 252, 255-56.) Post-surgery, his vision in his right eye was 20/40 and his left was 20/400 (20/200 with pinhole test). (AR 252.)

In August 2006, Dr. Suarez found that Willard's vision imposed the greatest limitation, noting that he required assistance from his wife due to this restriction. (AR 210.) Consulting doctor, James Hopkins, found that, in September 2006, Willard was limited in near and far acuity, depth perception, accommodation, color vision and field of vision. (AR 228.) At the time of his November 2007 examination by Dr. Soo Hoo, Willard reported diminished vision in his left eye but no significant difficulties in his right eye; the doctor noted that he could have difficulty with binocular acuity. (AR 276, 278.) Dr. Estes, a consulting doctor, found that Willard did not have a severe visual deficit, although blind in his left eye. (AR 286.) In November 2007, examining specialist Dr. Gross found that Willard's left eye was very blurred, his right vision was hazy with floaters, and his peripheral vision was constricted. (AR 269, 270.) Additionally, visual efficiency in his left eye was 23% and in the right 76%. (AR 271, 273.) He explained that visual acuity was decreased below expectations, which could be explained by a detached macula from the surgeries. (AR 269.) Treating physician Dr. Ludt reported that after Willard's 2005 eye surgery, he could not see sufficient detail to work. (AR 293.) He found that Willard had severe vision derangement and would stumble into objects in his peripheral vision. (*Id.*)

The above review of the entire record indicates that the ALJ's finding – that Willard could see small objects and hazards prior to November 2007 – is not supported by substantial evidence. The Court will remand this case to the ALJ for further consideration. First, as a treating physician, Dr. Ludt's opinion is entitled to controlling weight if well-supported and not inconsistent with substantial evidence in the record. 20 C.F.R. § 404.927(d)(2). Even if the ALJ determines it is not controlling, it is highly relevant as one of the only pieces of

evidence directly on point regarding Willard's ability to see details in 2005. Second, in 2006, Dr. Suarez found that Willard needed assistance from his wife due to his vision limitations. Third, critically, the ALJ never mentioned Dr. Gross's examination – the only specialized ophthalmic exam in the record. Specialists' opinions are generally entitled to more weight. 20 C.F.R. § 416.927(d)(5). Further, Dr. Gross's opinion supported Willard's report of diminished vision in his right eye, including haziness and floaters. At the hearing, Willard testified that he had no vision in his left eye and had a lot of "dirty liquid" in his right eye that caused periodic difficulties. (AR 42.) He stated that he couldn't use the computer because it takes too long for his eyes to focus due to floaters in his eyes, and he has to be very close to something to read it. (AR 45, 46.) In his June 2006 function report, Willard also noted an inability to see details. (AR 130.) The ALJ rejected Plaintiff's credibility solely because his symptoms were not substantiated by the medical evidence, which is error. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); SSR 96-7. On remand, the ALJ should re-assess Willard's credibility regarding his vision symptoms in light of the entire record.

In a related argument, Willard alleges the ALJ failed to follow SSR 83-20 in evaluating his onset date. The three factors relevant to evaluating the onset date are the claimant's allegation, the work history and the medical evidence. SSR 83-20. "[T]he date alleged by the individual should be used if it is consistent with all the evidence available." *Id.* However, the onset date cannot be inconsistent with the medical evidence. *Id.* If there are inconsistencies, additional development might be required. *Id.* Additionally, when it is impossible to determine the precise date an impairment became disabling, the date must be inferred from all the evidence describing the history and symptomatology of the disease process. The ALJ "should call on the services of a medical advisor when onset must be inferred." *Id.*

Willard alleges November 2005 as his disability onset date. He stopped working in August 2004, however, that was due to him being laid off. His attempt to work in early 2006 was unsuccessful.

The ALJ implicitly found that the onset date alleged by Willard was inconsistent with the medical evidence available, which is allowed under SSR 83-20. However, the ALJ used the date of Dr. Soo Hoo's examination as Willard's onset of disability date. That should only be done if there is substantial evidence indicating those dates are closely correlated. *See Swanson v. Sec'y of Health and Human Serv.*, 763 F.2d 1061, 1065-66 (9th Cir. 1985) ("the critical date is the date of *onset* of disability, *not* the date of diagnosis."). The ALJ did not identify any correlation. Rather, it seems the determination was based solely on the examination date and the fact that he assessed Willard as not disabled when examined in August 2006 by Dr. Suarez. As discussed above, that determination needs to be revisited regarding Willard's vision. Dr. Gross found that Willard's retinal surgeries were the appropriate treatment and there was no likelihood Willard's vision would improve. (AR 268.) That evidence and the entirety of the record indicates that Willard's visual limitations have been relatively constant since the first or second retinal surgery.

With respect to Willard's back impairment, the records indicate that Willard's degenerative disc disease began prior to 2005. (AR 188, 191, 293.) Dr. Suarez noted, in August 2006, that Willard was in chronic distress, had a hard time handling his lumbar problems, and treatment provided only mild relief. (AR 208, 210.) The lumbar x-rays from August 2006 and November 2007, each revealed degenerative disc disease with bony spurring and Dr. Soo Hoo considered both in his 2007 evaluation. (AR 275, 278.) This undermines finding that Willard's back problems did not reach a disabling state prior to November 2007. Dr. Ludt opined that since 2002, Willard had severe back pain including radiculopathy and, as early as January 2006, Willard could not sit for an entire work day but would need to lie down, and could only stand for two hours of the day. (AR 293.) The correlating medical records from Dr. Ludt do not appear to be in the record, therefore, additional development may be necessary. Finally, the ALJ concluded Willard was not credible regarding his symptoms prior to November 2007. As discussed above, the ALJ's credibility finding was in error. Upon remand the ALJ must re-assess Willard's testimony and any rejection of it must be supported by "specific, clear and convincing reasons."

*Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (required if no affirmative finding of malingering) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996)); *see Morgan v. Comm'n of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."); SSR 96-7p.

Upon remand, the ALJ must ensure he complies with SSR 83-20, obtaining additional evidence as necessary and seeking a medical advisor if warranted.

## **CONCLUSION**

The Court concludes the ALJ's Step Five finding that Plaintiff was not disabled prior to November 2007 was not supported by substantial evidence. This case is remanded to the ALJ for reconsideration.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 19) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the ALJ. The Clerk of Court should enter judgment and close this case.

DATED this 8th day of November, 2011.

D. Thomas Ferraro
United States Magistrate Judge